Statement of the Case.
NICHOLLS, J.
Plaintiffs alleged: That they owned in indivisión in the proportion of one half to the Said Widow Lastrapes and the other half to petitioners, Joseph Felix Lastrapes and Joseph Edward Lastrapes, *907 two lots of ground together with the buildings and improvements thereon, in the city of Opelousas, both of said lots fronting on Main street and Union street, and also fronting on Cheney street; 175 feet being the entire depth of both of the squares upon which they are situated. That one of said lots having a front of 127 feet on Main and Union streets contains the blacksmith shop and the family residence, now occupied by petitioner, Widow Victor Lastrapes, and which had been occupied by her with her said deceased husband and family for near 50 years, the said blacksmith shop being the building in which the blacksmithing and horseshoeing business was conducted by the deceased, Victor Lastrapes, and in which petitioner Joseph Felix Lastrapes now carried on the same business; the period for which the father and son had conducted said business in said building being- more than 40 years. That the other lot of ground owned by them is located on the opposite side of Cheney street, and had a front of 120 feet on Main and Union streets, and had located upon it the store building and residence occupied by petitioner Joseph Felix Lastrapes.
That the Colorado Southern, New Orleans & Pacific Railway Company had taken exclusive possession of Cheney street, which separated their two properties, and had constructed thereon a railroad through the city of Opelousas, upon which the said company was now operating its construction trains, and upon which it would at an early date be operating its passenger and freight trains, their tracks on said street being a portion of the ■ said company’s great transcontinental trunk line to New Orleans. That Cheney street before the said railway company took possession of it had been a public street and thoroughfare of the city long used by and necessary to the public, and especially to the property owners and residents residing on said street, including your petitioners.
That while the construction of said >company’s railroad on said street and the operation of trains thereon had greatly damaged them as would hereafter be set forth in detail, and would continue to damage them for an indefinite period, the taking possession of said street by the railway company was done in violation of law, and in contravention, not only of petitioner’s legal rights, but also those of the public, and especially of persons residing on or owning property on said street, for the following reasons, namely :
First. That the ordinance adopted by the board of aldermen of the city of Opelousas January 27, 1900, granting said company the right of way on said street, was illegal, and in contravention of the provisions of Act No. 79, p. 113, of 1896, entitled “An act to authorize cities and towns of this state of less than 25,000 inhabitants to grant to railroads and other corporations subject to conditions, the right to occupy and use the streets and alleys therein,” etc., and which provides that such franchises may be granted by such town or cities, provided that prior to such grant a majority of the property taxpayers in said city or town voting at an election to be called for such purpose shall approve said proposed grant. They show that Opelousas is a city of less than 25,000 inhabitants, and no election was held therein for the purpose of authorizing the grant of said franchise as required by the act of the Legislature above referred to.
Second. That Cheney street has a width' of only 40 feet, and the construction and operation of a railroad over and upon it necessarily involved the destruction of the use of said street as a passway, not only to the residents and property owners thereon, but to the public, as the said railroad company must have known, in asking for the grant of said franchise, and as the board of aldermen of said city must also have known when enacting said ordinance, and, even if the board *909 of aldermen had authority to grant a right of way over and along the public streets of the city of Opelousas, including Cheney street, without obtaining the approval of a majority of the voters of the city at an election held for that purpose, the said board had no legal right or authority to grant a right of way over said street without at the same time providing for the preservation of said street as a thoroughfare, and the said railway had no right to take possession of said street in such a manner as to preclude the use of the same to the public as a passway.
. That the said railroad company had by its illegal acts set forth above made itself liable to petitioners, not only for the actual damages inflicted upon them in the deterioration of the rental and salable value of their properties, but also for such consequential damages as they have suffered, and may hereafter suffer, from the construction and operation of said railroad on Cheney street, and also for punitory damages. That the dwelling house and store property occupied by petitioner Joseph Eelix Lastrapes, as also the dwelling house occupied by petitioner Widow Victor Lastrapes, were so near to the defendant company’s railroad track that the continuous ringing of bells, blowing of whistles, and the noise incident to escaping steam and the clatter of car wheels together with the shaking and trembling of the ground, incident to the frequency of passage to and fro of heavy trains, and the danger of fire from sparks emitted by the locomotive engines, and the nuisance of smoke and cinders and the deprivation of the use of Cheney street as a thoroughfare, had had the effect of so lessening and damaging the value of petitioner’s property as to render the same practically valueless for rental or for sale.
That, in addition to the damage done to their other property, they had suffered special damage to their blacksmith shop and the conduct of the blacksmithing and horseshoeing business in their blacksmith shop, and had established a reputation throughout the town and country for expert work in that line, which had been a source of much profit to them, but which had already been greatly impaired by reason of the fact that the animals being shod in the shop take fright at the sight and noise of passing trains, a branch of the blacksmithing business which would have to be abandoned entirely when the defendant company established on its line regular passenger and freight service which would take place in the near future. That they had suffered an actual loss and damage to their property of at least $6,000 in the diminution of its rental and salable value caused by the defendant company as aforesaid, which it should be compelled to pay them, together with punitory damages in the sum of $250.
They prayed that the defendant and the city of Opelousas be cited and that they recover against the said railroad company active and exemplary damages in the sum of $6,250.
Plaintiffs filed an amended petition, in which they alleged that in their original petition they claimed as actual damages the sum of $6,000, and which they now apportion as follows:
(1) The lot north of defendant company’s railway, together with the buildings and improvements thereon, the sum of $2,000.
(2) To the lot of ground south of the defendant company’s railway, and upon which the family residence and other improvements are situated, the sum of $3,000.
(3) To the blacksmith stand and business the sum of $1,000.
They prayed as in their original petition that this amendment be duly served and allowed.
Defendant, after filing an exception of vagueness and insufficiency of allegations to permit of its defending itself intelligently, answered. After pleading the general issue, it averred: That by ordinance adopted by *911 the board of aldermen of the city of Opelousas, La., on January 26, 1906,-it was granted the right to lay its main track in the center of Cheney street That the board of aider-men aforesaid had full authority under the charter of said city, being Act No. 136, p. 224, of 1898, to grant this right, and no such procedure as the submission of the question to a vote of the people was at all necessary. That its roadbed was carefully constructed on this street. That the same was ballasted with sand, entirely covering the cross-ties and on a practical level with the rails of its railroad. That the public passed and re-passed along that portion of Cheney street touching the property of plaintiffs with perfect ease and safety. That its railroad was a lawful structure constructed in a lawful manner, and its trains were operated with due care and prudence, and that, if plaintiffs suffered any inconveniences, they were such as were not recoverable in damages under the law.
In view of the premises, respondent company prayed that the demands of plaintiffs be rejected, and their suit dismissed, with costs and for general relief.
The district court rendered judgment in favor of the plaintiff for $1,357 as actual damages, and rejected their demand for exemplary damages.
Defendant has appealed.
Opinion.
In rendering judgment the district judge declared: That the testimony in the case was very conflicting as to the value of the properties before the construction of the road, its value since, and the amount of damage done to the property. That the defendant offered to purchase the property in, advance at what appeared to have been a fair price, but made no tender of the amount, nor of the damages. That the court did.not consider such an offer as extinguishing or affecting the plaintiffs’ claim for damages. That it appeared that the defendant desired to obtain the property for depot or terminal purposes, but did not institute an expropriation suit to condemn it. That, even had it instituted such a proceeding, the only effect of a tender in advance to the owner would have been to release it from liability for costs, and not from liability for damages. That the constitutional provision was positive and unequivocal, requiring that, in case private property be damaged for purposes, adequate and just compensation must be made to the owner for the damages. That he did not therefore attach any weight to the defendant company’s offer to purchase the property as affecting the plaintiffs’ damages. Neither did he attach weight to the testimony of J. T. Stuart and Louis Rogers, who stated upon the witness stand what they were willing to give for the property since the construction of the roadbed. Neither of them made any offer to purchase the property, and they were in no manner bound by it at the price stated by them, even if the xflaintiffs had offered to sell. That it was well settled that such testimony was valueless in cases of this kind. That the court knew of no method of reconciling the conflict in the testimony as to the damages except by following the rule approved of by the Supreme Court of striking an average between the estimates of the witnesses on both sides.
That the aggregate value of the properties by the witnesses before the construction of the roadbed was the sum of $4,400. Dividing this aggregate by the number of witnesses, there was an average valuation of the property before the construction of the road of $6,285. The aggregate valuation of the property since the construction of the road as' given by the witnesses was $34,570, which, divided by the number of witnesses, gave an aggregate valuation after the construction of the roadbed of $4,938. Sub *913 tracting the present average of value of the property as found by the witnesses from the former value as found by them gave as the amount of damages suffered by the plaintiffs the sum of $1,347. The judge said that in making this estimate he had discarded entirely the testimony of the plaintiffs themselves, and taken only the testimony of the disinterested witnesses.
The district judge is in error in stating that this court has approved and recognized as the proper rule for establishing damages the method adopted by him. We have, on the contrary, declared that method was faulty. We simply declared that, in some particular case where that method for reaching a conclusion as to damages had been resorted to, the conclusion so reached might be found a correct conclusion by this court, applying to the evidence in that case correct rules as the weight and probative force of that evidence.
The testimony shows after the defendant company had established its line of road and had built its tracks on Cheney street, but had not, as yet, definitely fixed upon the property on which it was to build a depot, Mr. Guilbeau, the attorney of the company, seeking to ascertain from the plaintiffs at what price this property on the south side of Oheney street could be purchased for that purpose, expressed a willingness, and perhaps an offer, to purchase it from them for $7,000. The plaintiffs declined to sell at all, and thereupon the company proceeded to negotiate for and purchased other property in the vicinity for that purpose.
The company subsequently built its passenger depot on property so afterwards purchased. It is described as a handsome building with proper approaches. We think it is shown that the building of this depot improved, so far as appearances were concerned, the surroundings of plaintiffs’ property. It did not follow, however, from that fact that the construction by defendant of its tracks and roadbed thrown along Cheney street in front of plaintiffs’ property did not injuriously affect its value. The plaintiffs were under no obligation to sell their property conventionally to the defendant company. They were not called on to disclose the reason why they declined to do. so. Sentimental reasons resulting from home associations or unwillingness to sell! by reason of the property being of special value to them for the prosecution of the business in which they were engaged warranted them in refusing to deal conventionally with the company. If circumstances were such as to entitle the company to force a transfer to it from considerations of the public welfare and good, it should have had recourse to expropriation proceedings wherein the rights and obligations of parties would have been tested by and fixed under the rules applicable to that proceeding. The company did not do so, but supplied itself independently of the plaintiff' with everything it needed to have for the public service. The course followed by the defendant left as its resulting situation the-plaintiffs in this case as continuing owners, of their property with the undoubted constitutional right of demanding adequate and just compensation for damage .done to their property from its having been damaged for public purposes. The rights and obligations of the parties have to be tested from that existing situation of affairs and no other.
The sole question before the court, therefore, is whether plaintiffs’ property has been “damaged for public purposes” (Const, art. 167), and, if it has, what is that just and adequate compensation.
We have given close examination to the testimony adduced and brought our own judgment to bear upon it. Plaintiffs’ property on the south side of Oheney street prior to the construction of defendant’s. *915 tracks and line on that street had attached to it, as factors giving it value, the first that it was a comfortable home with a fairly good house upon it with fences, trees, and other accessories. It had also attached to it, as giving it value, the fact that it was and had been for many years a location specially suitable for carrying on the business of blacksmithing and horseshoeing. Those elements or factors contributing to value have been shown by the testimony to have been practically withdrawn for residential purposes and greatly impaired for the purposes for which up to the time when the road was built it had been profitably employed. Defendant’s witnesses themselves admit that neither property is any longer, desirable for residential purposes, and we are satisfied that the property has lost largely the benefit of being advantageously employed for at least one remunerative branch of business. We are thus shown good grounds for maintaining plaintiffs’ claim that their properties had been damaged by the construction of the road. We are satisfied that, in lieu of these lost factors which gave value to plaintiffs’ properties, defendant has not shown the substitution in their place of other factors giving value to the properties. The defendant company, after having supplied itself with all the properties deemed necessary by it for the proper operation of its road for the public benefit, has withdrawn from the market as a probable purchaser, and need not be considered as any longer a factor in determining value. We attach no great weight to the testimony of Rogers and Stuart.' The estimates of value which they reached were from a speculative view and from special conditions expected to arise from defendant’s needs in the future which the record does not show have in fact been realized. They admit their ability to purchase and their willingness to purchase on speculation, but they have failed to show by their actions that they have any confidence in investments to be made on the line of defendant’s properties. No one, it would seem, has shown any disposition since the construction of defendant’s road to purchase property on Cheney street along the line of defendant’s tracks, though the road had been in operation for more than a year. We are satisfied that Stuart and Rogers and Lawler as witnesses are at fault when they declare that plaintiffs’ properties have enhanced in value by the construction of defendant’s line of road. We do not think that there is any basis for Lawler’s assertion that plaintiffs’ properties have gained any advantage over other prop-" erties in the vicinity by the construction of the road. We think that there has been a diminution in value, and the only question to be solved is the extent of the diminution.
We think that the estimates of Boagni and of Estorges of the value of plaintiffs’ properties before the building of the road are too high. Boagni evidently had in view in forming his estimate the prices given by the defendant company itself to different parties in acquiring the ownership of properties for depot and switching purposes. We do not think that estimates formed from those facts are accurate and furnish a general standard of value. Lawler’s estimates are probably too low. 1-Iis estimate of the value of plaintiffs’ properties since the construction of defendant’s. road is evidently an optimistic view of what may happen in the future, not of what has happened. We think that witnesses testifying to the values of land furnish to courts more reliable information on that subject when they testify as to what they know to be the consensus of opinion of the people of the community in which they are situated as to the price which the general public would be reasonably expected to offer to acquire the ownership of particular property in view of the *917 advantages and disadvantages of owning that property, than when they testify to their individual opinion of values. The conclusion reached by us after careful consideration of the evidence is that the judgment appealed from is correct, and it is hereby affirmed.
MONROE, J., dissents.